IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES T. BENNETT** | **PLAINTIFF** |
| v. | **CIVIL ACTION NO. 1:22-cv-270-TBM-RPM** |
| **MEMORIAL HOSPITAL AT GULFPORT** *through its President & CEO Kent G. Nicaud*; **MYRON S. McCOO**, *JD Vice President, HR*; **SHONA REEVES**, *HR Manager*; **AMBERELY BOSTWICK**, *HR Business Partner*; **TONY ALVES**, *MSHRM, Director of HR*; **ANTON COOPER**, *Director of Security*; **NORMAN POPE**, *LT Supervisor of Security*; *and* **LESTER BENNETT**, *Former Security Manager* | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER

James Bennett was a security officer at Memorial Hospital at Gulfport until his firing in 2022. He represents himself *pro se* and has filed suit against the Hospital and its staffers primarily under Title VII of the Civil Rights Act. Those defendants have moved to dismiss all his claims. They argue his employment discrimination claims were not properly filed, his due process claims are baseless, and any state-law claims are similarly meritless.

After considering the Motion, this Court agrees with the Defendants, for the most part. Bennett cannot recover on the majority of his claims, but the Defendants have not carried their burden on several portions of their motion. Therefore, this Court will grant their motion in part and deny their motion in part.

## I. BACKGROUND AND PROCEDURAL HISTORY

James Bennett was hired as a Security Officer by the Hospital[1] on February 5, 2007. [6-3], p. 1.[2] Roughly fourteen years later, in December 2021, he applied for a promotion to Sergeant. [6-3], p. 1. Bennett was then fired in May 2022.

Following the firing, Bennett filed a charge of discrimination with the Equal Employment Opportunity Commission on June 29, 2022. [6-3], p. 1. He alleged to the Commission that he "was not promoted because of my age (61) and race (Black)." [6-3], p. 1. He did not mention any other discriminatory actions, including his firing. [6-3], p. 1.

Bennett received his notice of right to sue from the Commission in July 2022 and filed this suit on October 3, 2022. In his complaint, Bennett alleged that the Hospital and its staffers wrongfully terminated him due to his race, denied him due process, retaliated against him, harassed him, created a hostile work environment, failed to investigate the alleged allegations against him, and failed to promote him. [1], p. 6.

The Defendants have now moved to dismiss. Proceeding under Federal Rule of Civil Procedure 12(b)(6), they argue that Bennett has not stated a claim because his discrimination

---

[1] The Hospital is jointly owned by the city of Gulfport and Harrison County.

[2] The facts set forth in this section are taken from Bennett's Complaint [1], documents attached to that complaint, or documents attached to the Defendants' motion. *See George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). The Defendants attached four exhibits to their motion: (1) an email purporting to notice a promotion ceremony for the job that Bennett allegedly applied for [6-1]; (2) a Report of Disciplinary Action concerning Bennett [6-2]; (3) the Charge of Discrimination filed by Bennett before the Equal Employment Opportunity Commission [6-3]; and (4) an internal memorandum from the Commission recommending dismissal and notification of right to sue [6-4].

Of these, only the Charge of Discrimination is explicitly contemplated by Bennett's Complaint and documents attached to it. *See George*, 36 F.4th at 619. Therefore, rather than convert this motion into a summary judgment motion, this Court has limited itself to considering Bennett's Complaint, the Complaint's exhibits, and this Charge of Discrimination.

claims are procedurally barred, his due process claims are baseless, and he has failed to adequately plead any state-law claims he has raised.

## II. ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). That plausibility standard requires a plaintiff to plead facts allowing a court to infer reasonably that a defendant is liable. *Id.* (quoting *Ashcroft*, 556 U.S. at 678). Courts accept any well-pleaded allegations as true and view them in the light most favoring the plaintiff. *Id.* (quoting *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012)).

Bennett's complaint targets the Hospital and its staff for a wide range of conduct as noted above. His claims broadly fall into four buckets: (1) Title VII-discrimination claims against Hospital staff; (2) Title VII-discrimination claims against the Hospital; (3) due process claims against the Hospital and its staff; and (4) various state-law claims.

### A. A Title VII Overview

Title VII of the Civil Rights Act bars racial discrimination in the workplace. 42 U.S.C. § 2000e-2(a). The statute itself is enforced through an administrative system. First, a plaintiff must exhaust administrative remedies. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018). This means an employee must file a charge of discrimination with the Commission laying out any discriminatory actions. *Id.* That charge must be filed with the Commission within 180 days of the discriminatory act.[3] *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 549-50

---

[3] In states that have a local or state agency that is equivalent to the Commission, plaintiffs have 300 days to file a charge provided they have begun proceedings with the state or local agency. 42 U.S.C. § 2000e-5(e). Mississippi

(5th Cir. 2009); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 256-57, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980). Then, the Commission investigates and attempts to obtain voluntary compliance from the employer. No employment-discrimination issue can be sued on until the Commission can investigate that issue, determine the veracity of the complaint, and try to obtain voluntary compliance first. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970); *see also* 42 U.S.C. § 2000e-5(b). Finally, if the alleged problem is not addressed to the employee's liking, the Commission can authorize the employee to sue his employer and achieve compliance. 42 U.S.C. § 2000e-5.

Few litigants have direct evidence of discrimination. Therefore, most Title VII claimants offer circumstantial evidence. To evaluate that evidence, courts normally apply the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

**B. Bennett's Title VII Claims**

To begin, the Hospital staffers are not proper defendants here. "Individuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Comm'cns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002)). Therefore, the motion is granted as to Bennett's Title VII claims against Hospital staff.

Turning to Bennett's claims against the Hospital, the motion does not address the merits of Bennett's Title VII claims against the Hospital. Instead, it asserts that Bennett's claims do not meet Title VII's two threshold requirements related to exhaustion and timeliness.

---

has no such agency, so the 180-day period applies. *See Harding v. Huntington Ingalls Indus.*, No. 1:15-cv-274-LG, 2015 WL 6812242, *1 (S.D. Miss. Nov. 5, 2015).

### 1. Administrative Exhaustion

The Hospital asserts that many of Bennett's discrimination claims were not brought before the Commission. To determine whether he exhausted a claim, this Court must liberally construe his discrimination charge and determine its scope. *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (quoting *Patton Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017)). Bennett's charge of discrimination, in its entirety, reads

> I was hired February 5, 2007, as a Security Officer. In December 2021, I applied for promotion to the position of Sergeant. I was interviewed, but not selected, in January 2022 in favor of a younger White employee. I was not promoted because of my age (61) and race (Black). I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967.[4]

[6-3], p. 1.

Even construed liberally, that charge only alleges a failure to promote. Nowhere does Bennett mention wrongful termination, retaliation, harassment, creation of a hostile work environment, or failure to investigate allegations against him. *See Wiggins v. Golden Corral Corp.*, 802 F. App'x 812, 814 (5th Cir. 2020) ("But the charge does not assert any claim based on failure to promote. Rather it asserts that other workers received more favorable schedules, that they wre given food while on the clock, and that [the general manager] treated black employees in a 'tyrant-like manner.' . . . Nowhere in the charge did Wiggins claim that he was not promoted because of his race."); *Pacheco v. Mineta*, 448 F.3d 783, 791-92 (5th Cir. 2006) ("On its face, Pacheco's administrative charge alleges none of the elements of disparate impact. Instead, it is facially a

---

[4] While Bennett's charge referenced the Age Discrimination in Employment Act, his lawsuit only refers to Title VII. [1], p. 4.

disparate-treatment claims[.] . . . As the district court below noted, this complaint 'clearly supports claims for unfair and intentional discrimination, but does not even suggest claims under a disparate impact theory.'"). Of all Bennett's workplace-discrimination claims—wrongful termination, retaliation, harassment, creation of a hostile work environment, failure to investigate the allegations, failure to promote—only the failure to promote claim was exhausted. Therefore, the other workplace-discrimination claims shall be dismissed as unexhausted.

### 2. Timeliness

The Hospital next asserts the remaining claim—failure to promote—was not timely brought before the Commission. Again, Bennett had 180 days from the date of the discriminatory act to file his charge. *Ikossi-Anastasiou*, 579 F.3d at 549. So, when did the Hospital not promote Bennett?

The Supreme Court has said that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Del. State Coll.*, 449 U.S. at 258. Generally, that means that the 180-day clock begins running when an allegedly discriminatory decision was made and the plaintiff "was notified." *Id*; *Ikossi-Anastasiou*, 579 F.3d at 550 ("Thus the discriminatory act (if any) was communicated to Ikossi in August, and the January letter confirming denial of her request was not a new act of discrimination.").

Bennett represented to the Commission that the non-promotion happened sometime in January 2022. [6-3], p. 1. But the Hospital has attached to its motion a December 16, 2021, email—sent to Bennett and others—announcing the promotion ceremony for Robert Plym for the job Bennett sought. According to the Hospital, that email, at the latest, put Bennett on notice he was not being promoted. However, that email was attached to the Defendants' motion to dismiss, and

this Court has already determined it is outside the limited purview applicable to a motion to dismiss. *See supra* footnote 2.

Again, Bennett claims he was not promoted sometime in January 2022. 180 days after January 1, 2022, was June 30, 2022. Bennett filed his discrimination charge on June 29, 2022, one day before the expiration of that timeframe. Therefore, based on the limited pleadings this Court can consider at the motion-to-dismiss stage, the Hospital has not demonstrated that Bennett's remaining Title VII claim is time barred and thus should be dismissed. *See Ikossi-Anastasiou*, 579 F.3d at 550.

**C. Due Process**

Bennett also raises due process claims against the Hospital and its staff. Due process, unlike Title VII, is a constitutional question. "The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *Edionwe*, 860 F.3d at 292 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)). Based on his complaint, Bennett appears to be asserting a protected interest in his continued employment.

A protected interest in employment is not a simple thing. For an employee of a public institution like Bennett to have a protected interest in continued employment, he must demonstrate it "by reference to a (1) statute; (2) written contract; or (3) mutually explicit understanding enforceable as an implied contract." *Ward v. Wilkinson Cnty. Sch. Dist.*, No. 22-60276, 2023 WL 2418212, *2 (5th Cir. Mar. 7, 2023) (unpublished) (quoting *King v. Newton Cnty. Bd. of Supervisors*, 144 F. App'x 381, 384 (5th Cir. 2005)).

Bennett alleges no facts indicating he had a protected interest in his continued employment, especially when viewed against the backdrop of Mississippi's rigid presumption for at-will employment. *See Solomon v. Walgreen Co.*, 975 F.2d 1086, 1089 (5th Cir. 1992) (citing *Butler v. Smith & Tharp*, 35 Miss. 457, 464 (1858)). Without a protected interest, his due-process claim must fail. *See Johnson v. City of Shelby*, 642 F. App'x 380, 382-86 (5th Cir. 2016) (finding that nothing under Mississippi state law provided public employees a presumption against at-will employment and therefore a protected interest in their employment); *Johnson v. Southwest Miss. Regional Medical Center*, 878 F.2d 856, 859-60 (5th Cir. 1989) (same). Therefore, the motion should be granted on these claims as well.

### D. State-Law Claims

The Defendants have also moved to dismiss any implied state-law claims in Bennett's Complaint. They identify four potential claims: wrongful termination, failure to investigate, negligence, and intentional infliction of emotional distress. [7], pp. 10-15.

First, as noted above, Mississippi is an at-will employment state. This means that "Mississippi 'follow[s] the common-law rule of at-will employment'" and "wrongful-discharge suits in Mississippi generally must be based upon written employment contracts." *Southern Farm Bureau Life Insurance Company v. Thomas*, 299 So.3d 752, 755 n. 1 (Miss. 2020) (quoting *Thomas v. S. Farm Bureau Life Ins. Co.*, 751 F. App'x 538, 541 (5th Cir. 2018)). In fact, "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Id.* at 755 (quoting *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603, 606 (Miss. 1993)).

Under that doctrine, the Mississippi Supreme Court has recognized that Title VII, not Mississippi law, is the avenue to pursue discrimination-based termination claims. *Id.* at 758 (citing *McArn*, 626 So. 2d at 606). In fact, short of evidence of a written contract, under Mississippi law there are only two exceptions to the at-will employment doctrine: termination for refusal to participate in an unlawful act and termination for reporting the illegal acts of an employer. *Id.* at 758 n. 3 (quoting *McArn*, 626 So. 2d at 607). Neiter of the exceptions recognized in *McArn* are supported by the factual allegations in Bennett's complaint; nor has he alleged any written contract terms barring his termination. Therefore, any wrongful termination claim under Mississippi law will be dismissed.

Next, the Defendants assert that any claim for failure to investigate must be dismissed because the "Defendants are not aware of any Mississippi state law cause of action for 'failure to investigate.'" [7], p. 11. Under federal pleading rules, "[t]he plaintiff is required to give fair notice in the pleadings of all claims brought against the defendant." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013). Based on their motion, the Defendants are aware that Bennett has apparently brought claims against them for failure to investigate allegations against him. When the Defendants filed their motion, their burden was to demonstrate to this Court that those facts fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). However, rather than demonstrate that this claim does not exist under Mississippi law through statutes caselaw, or other authorities, the Defendants have relied on that cursory statement provided in the opening of this paragraph. Without more, this Court cannot appropriately determine if Bennett has stated a claim.

Therefore, this portion of the motion must be denied. That is not to say that this claim will survive further scrutiny; this Court has its own concerns regarding its viability in Mississippi. Instead, the alleged claim simply remains for now.

The Defendants' third assertion is that any negligence claims—including negligently rather than intentionally failing to investigate—are precluded by the Mississippi Workers' Compensation Act. [7], p. 12-13. As the Supreme Court of Mississippi has stated "if the facts alleged or proven point to negligence, gross negligence, or recklessness, despite an allegation of actual intent, the[e] Court will find that workers' compensation is the sole avenue for relief for the aggrieved party." *Schaffner Manufacturing Co., Inc. v. Powell*, 331 So. 3d 11, 14 (Miss. 2022) (quoting *In re Est. of Gorman ex rel. Gorman v. State*, 307 So. 3d 421, 425-26 (Miss. 2020)); *see also Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 648, 653 (Miss. 2021) (holding that the Mississippi workers' compensation system was the sole avenue for relief for negligence claims where the plaintiff primarily alleged "pregnancy and sex discrimination" also "alternatively" alleged "the torts of negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, termination in violation of public policy, gross negligence, and negligent supervision."). Thus, to the extent Bennett has alleged common law negligence claims, those must be brought in a Mississippi Workers' Compensation proceeding.

Finally, the Defendants assert that any intentional infliction of emotional distress claim must also be dismissed. Similar to the analysis regarding the failure to investigate claim, the Defendants have provided little argument on this point. Beyond articulating Mississippi's general standard for intentional infliction of emotional distress cases and correctly noting that in Mississippi damages are almost never awarded in the employment context, the Defendants do not

actually grapple with the allegations they say Bennett has made. Examining his complaint, Bennett asserts racial epithets were used against him and he was being stalked. These plausibly support a cause of action in Mississippi, *see Spiers*, 328 So. 3d at 653-54 (noting that while racial slurs alone are likely not enough to support a claim for intentional infliction of emotional distress, coupled with other conduct they could support a claim), and that is all Bennett must do under the Rule 12(b)(6) burden. *Shaw v. Villanueva*, 918 F.3d 414, 416 (5th Cir. 2019) (quoting *Phillips v. City of Dall.*, 781 F.3d 772, 775-76 (5th Cir. 2015)). Without more argument from the Defendants rendering that claim implausible, their motion cannot be granted on this ground.

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss [6] is GRANTED IN PART AND DENIED IN PART. Bennett's Title VII claims against the individual defendants, his due process claims, his negligence claims, and his unlawful termination claims are DISMISSED WITH PREJUDICE; his unexhausted Title VII claims are DISMISSED WITHOUT PREJUDICE. The Defendants' motion is DENIED WITHOUT PREJUDICE in all other respects.

THIS, the 2nd day of August 2023.

TAYLOR B. McNEEL<br>
UNITED STATES DISTRICT JUDGE